# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**ELIZABETH L. PERRIS**  
CHIEF BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700  
PORTLAND, OREGON 97204  
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK  
MARGOT LUTZENHISER, LAW CLERK

January 27, 2009

Kent V. Snyder  
Snyder & Associates, P.C.  
424 NW 19th Ave.  
Portland, OR  97209-2004

Wayne Godare  
Office of the Trustee  
1300 SW 5th Ave. Ste. 1700  
Portland, OR  97201

    Re:  <u>Clarice Rosalie Schenck</u>, Case No. 05-47887-elp13  
           Debtor's Motion to Pay Off Chapter 13 Plan

Dear Counsel:

    I have received and reviewed the correspondence from both of you in response to my January 22 letter. Both of you have explained how you made your calculations at the time the plan was confirmed. What is clear to me is that debtor and the trustee had different understandings of how this plan would work with regard to the MBNA claim and the payment that would be made to the other unsecured creditors.

    The plan provides that "not less than" the best interest amount of $42,774 will be distributed to creditors pursuant to paragraphs 2(d) and (e), and that the creditors holding allowed unsecured nonpriority claims will receive approximately 50 percent of their claims. Paragraph 11 of the plan provides that the MBNA cosigned debt will be paid in full ahead of paragraph 2(d) and (e) claims. It does not say whether the amount paid on the MBNA claim will be deducted from the best interest number, thereby reducing the amount left to be paid to the other unsecured creditors.

    The plan language is ambiguous. The ambiguity is apparent from both the reading of the plan language and from the different ways the parties performed their calculations in anticipation of confirmation. Debtor argues that the plan language is clear,

Kent V. Snyder
Wayne Godare
January 27, 2009
Page 2

because debtor did not use the trustee's standard language for paying a claim to protect a co-debtor. That standard language specifically says that "This paragraph shall not alter the debtor(s) obligations under paragraph 2(f) of the plan." The language debtor used in paragraph 11 of her plan says: "The Cosigned debt to MBNA is to be paid in full thru the trustee with interest at 10% to protect the cosigner; to be paid ahead of paragraph 2(d) and (e) claims." However, the language of paragraph 2(f) says that the best interest number is $42,774, "and not less than that amount shall be distributed to creditors pursuant to paragraphs 2(d) and (e)." The language chosen by debtor to include in paragraph 11 is not so clear as to remove doubt as to whether the full $42,774 must be distributed to the unsecured allowed claims under paragraph 2(e) (there were no paragraph 2(d) creditors).

The trustee says that he understood that the MBNA claim would be paid in addition to and separately from the best interest number for the unsecured creditors. Using anticipated unsecured claims of $54,764, which did not include the MBNA claim, the approximate payout was 78 percent. The trustee did not object to the fact that the plan indicated an approximate payout of 50 percent, because the numbers were "close enough" for the trustee.

Debtor says that her calculations began with an anticipated total of $70,000 unsecured claims, which included the MBNA claim, then deducted the approximately $17,000 for the payment of the MBNA claim, plus $3,000 interest on that claim, leaving a balance of $50,000 in unpaid unsecured claims. Debtor then took the best interest number of $42,774, deducted the $17,000 to be paid on the MBNA claim (mistakenly failing to include the payment of interest), leaving $25,774 available to pay the remaining $50,000 in unsecured claims. This came to approximately 50 percent of the claims, as stated in the plan. Had debtor included the interest, the percentage would have been 46 percent of the claims.

In light of the ambiguity, I conclude that I will adopt the trustee's current position, that debtor must pay at least the percentage for all unsecured claims as she would have had to pay had she not separated out the MBNA claim for different, preferential treatment. This is debtor's plan; any ambiguity should be resolved in favor of the creditors, not debtor who drafted the ambiguous provision in the first place. Further, the Code requires that creditors receive at least as much under the

Kent V. Snyder
Wayne Godare
January 27, 2009
Page 3

plan as they would have received in a chapter 7 case. 11 U.S.C. § 1325(a)(4). In a chapter 7 case, all unsecured creditors, including MBNA, would have shared in the $42,774 best interest number. I will interpret the ambiguity to comply with the Code.

    Applying that approach, creditors holding allowed unsecured claims should receive a minimum of 61 percent of their claims, which is the best interest number, $42,774, divided by the total amount of allowed unsecured claims, $70,075. MBNA has already been paid in full. Therefore, its share of the "best interest pot," which is $10,536 ($17,273 claim x 61%), must be deducted in calculating how much remains to be paid. The trustee should submit an order so providing. The February 11, 2009 continued hearing will be removed from the court's calendar.

                                  Very truly yours,

                                  *Elizabeth L. Perris*

                                  ELIZABETH L. PERRIS
                                  Bankruptcy Judge